# 23-14049

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ESTATE OF RICHARD D. SPIZZIRRI, DECEASED,
JOHN H. MCATEE, JR., PERSONAL REPRESENTATIVE,

Petitioner-Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

## ON APPEAL FROM THE DECISION OF
## THE UNITED STATES TAX COURT

## BRIEF FOR THE APPELLEE

DAVID A. HUBBERT
*Deputy Assistant Attorney General*

ELLEN PAGE DELSOLE          (202) 514-8128
POOJA A. BOISTURE           (202) 514-6072
*Attorneys*
*Tax Division*
*Department of Justice*
*Post Office Box 502*
*Washington, D.C. 20044*

15256054.1

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, counsel for the Commissioner of Internal Revenue hereby certify that, to the best of their knowledge, information, and belief, the following persons and entities have an interest in the outcome of this appeal:

Boisture, Pooja A., Attorney, Appellate Section, Tax Division, United States Department of Justice

Bowers, David Ellis, Jones Foster, PA, counsel for petitioner

Camp, Ray Malone, Attorney, Office of Chief Counsel, Internal Revenue Service

DelSole, Ellen Page, Assistant Chief, Appellate Section, Tax Division, United States Department of Justice

Estate of Richard D. Spizzirri, deceased, petitioner-appellant

Herrera, Edwin A., Area Counsel, Office of Chief Counsel, Internal Revenue Service

Hubbert, David A., Deputy Assistant Attorney General, Tax Division, United States Department of Justice

Lueders, Holly, decedent's surviving spouse

MacEachen, John D., Senior Counsel, Office of Chief Counsel,

   Internal Revenue Service

McAtee, Jr., John J., personal representative of the Estate of

   Richard D. Spizzirri

O'Connor, Joanne M., Jones Foster, PA, counsel for petitioner

Seibert, Michael, Attorney, Office of Chief Counsel,

   Internal Revenue Service

Smith, Bryant W., Senior Counsel, Office of Chief Counsel, Internal

   Revenue Service

Spires, Joseph W., Division Counsel, Office of Chief Counsel, Internal

   Revenue Service

Urda, Hon. Patrick, Judge, United States Tax Court

Walker, James R., Lewis Roca Rothgerber Christie LLC, counsel for

   petitioner

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 11th Cir. R. 28-1(c) and Fed. R. App. P. 34(a), counsel for the Commissioner of Internal Revenue respectfully inform this Court that they believe that oral argument may be helpful in considering the estate tax issues in this case.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons and

Corporate Disclosure Statement ................................................... C-1

Statement regarding oral argument............................................................i

Table of contents.......................................................................................ii

Table of citations ...................................................................................... v

Statement of jurisdiction...........................................................................x

    1.    Jurisdiction in the Tax Court ................................................... x

    2.    Jurisdiction in the Court of Appeals ...................................... x

Statement of the issue................................................................................1

Statement of the case .................................................................................2

    (i)    Course of proceedings and disposition in the court

        below ........................................................................................2

    (ii)    Statement of the facts .............................................................3

        1.    The marriage of Spizzirri and Lueders and their

            antenuptial agreement ...................................................3

        2.    Spizzirri's will, his death, and the probate

            proceedings...................................................................7

**Page**

3. The IRS's examination of the Estate's tax return and the resulting notice of deficiency ...........................8

4. The Tax Court opinion....................................................9

(iii) Statement of the standard of review....................................13

Summary of argument ...........................................................13

Argument:

The Tax Court correctly determined that the Estate was not entitled to deduct payments it made to decedent's stepchildren .....................................................................16

A. Introduction to estate taxes and deductions for claims against the estate................................................16

B. The payments to Spizzirri's stepchildren are not deductible as claims against the Estate because they do not meet the requirements of I.R.C. § 2053(c)(1)(A).............23

1. The payments were not bona fide ................................24

2. The payments were not contracted for adequate and full consideration in money or money's worth .....31

a.     By law, Lueders's waiver of marital rights at Spizzirri's death is not consideration ................. 32

b.     Lueders's waiver of her contingent right to spousal support and the equitable distribution of property in the event of divorce is not consideration because the parties never divorced ........................................ 35

Conclusion ............................................................................. 41

Certificate of compliance ....................................................... 42

Certificate of service ............................................................. 43

# TABLE OF CITATIONS

**Cases:**                                                          **Page(s)**

*APA Excelsior III L.P. v. Premiere Techs., Inc.,*

    476 F.3d 1261 (11th Cir. 2007) ......................................... 19, 23

*Commissioner v. Wemyss,*

    324 U.S. 303 (1945) ............................................................. 34

*Est. of Carli v. Commissioner,*

    84 T.C. 649 (1985) ....................................................... 31, 38-39

*Est. of Glen v. Commissioner,*

    45 T.C. 323 (1966) ......................................... 10, 19, 24, 29, 37

*\*Est. of Herrmann v. Commissioner,*

    85 F.3d 1032 (2d Cir. 1996) ......................... 5, 19-21, 28, 34-40

*\*Est. of Huntington v. Commissioner,*

    16 F.3d 462 (1st Cir. 1994) ...................... 18, 24, 26, 29, 35, 38

*\*Est. of Kosow v. Commissioner,*

    45 F.3d 1524 (11th Cir. 1995) ................... 13, 17, 21, 23, 36-37

\* Cases or authorities chiefly relied upon have asterisks.

**Cases (cont'd):** **Page(s)**

*Est. of Waters v. Commissioner,*

    48 F.3d 838 (4th Cir. 1995) .............................................. 13, 20

*Harris v. Commissioner,*

    340 U.S. 106 (1950) ................................................................ 20

*INDOPCO, Inc. v. Commissioner,*

    503 U.S. 79 (1992) ................................................................. 23

*\*Keller v. Commissioner,*

    44 T.C. 851 (1965) ...................................................... 26-27, 29

*Longino v. Commissioner,*

    593 F. App'x 965 (11th Cir. 2014) .......................................... 30

*McMurtry v. Commissioner,*

    203 F.2d 659 (1st Cir. 1953) ................................................... 20

*Musso v. Ostashko,*

    468 F.3d 99 (2d Cir. 2006) ...................................................... 39

*Natchez v. United States,*

    705 F.2d 671 (2d Cir. 1983) .............................................. 18-20

\* Cases or authorities chiefly relied upon have asterisks.

**Cases (cont'd):** **Page(s)**

*Rubin's Est. v. Commissioner*,

    57 T.C. 817 (1972), *aff'd*, 478 F.2d 1399 (3d Cir. 1973)........22

*Sherman v. United States*,

    462 F.2d 577 (5th Cir. 1972).................................................22

*Spruance v. Commissioner*,

    60 T.C. 141 (1973), *aff'd*, 505 F.2d 731 (3d Cir. 1974)..........29

*United States v. Stapf*,

    375 U.S. 118 (1963) ...............................................................19

*Welch v. Helvering*,

    290 U.S. 111 (1933) ...............................................................23

**Statutes:**

Internal Revenue Code (26 U.S.C.):

    § 2001(a) ................................................................................ 16

    *§ 2034................................................................ 15, 17, 19

    § 2043(b) ............................................................................10-11

    *§ 2043(b)(1) .......................................10, 15, 18-19, 28, 32, 34

    § 2043(b)(2) ...........................................................................18

    § 2051.....................................................................................17

\* Cases or authorities chiefly relied upon have asterisks.

**Statutes (cont'd):**                                    **Page(s)**

Internal Revenue Code (26 U.S.C.) (cont'd):

§ 2053(a)(3) ................................................................ 1, 17

§ 2053(c) ....................................................................... 24

*§ 2053(c)(1)(A).................... 9-10, 14, 17-18, 21, 23-24, 28, 34

§ 2056(a) ....................................................................... 19

§ 2516............................................................................ 18

§ 6213............................................................................ xi

§ 6214............................................................................ xi

§ 7442............................................................................ xi

§ 7482(a)(1) ................................................................... xii

§ 7483............................................................................ xii

§ 7491(a) ....................................................................... 23

**Regulations:**

Treasury Regulations (26 C.F.R.):

§ 20.2053-1(b)(2)(i) .................................................... 24

§ 20.2053-1(b)(2)(ii) ................................................... 25

§ 20.2053-1(b)(2)(ii)(A) ........................................... 26-27

§ 20.2053-1(b)(2)(ii)(B) .............................................. 26

\* Cases or authorities chiefly relied upon have asterisks.

**Regulations (cont'd):**                                         **Page(s)**

Treasury Regulations (26 C.F.R.):

§ 20.2053-1(b)(2)(ii)(C) ............................................................ 26

§ 20.2053-1(b)(2)(ii)(D) ............................................................ 26

§ 20.2053-1(b)(2)(ii)(E) ............................................................ 30

§ 20.2053-1(b)(2)(iii)(A) ........................................................... 24

**Miscellaneous:**

11th Cir. R. 28-1(c) ...................................................................i

Fed. R. App. P. 34(a) .................................................................i

R. Stephens, et al., *Fed. Est. and Gift Tax.* ¶ 4.15,

1999 WL 1031620 (updated June 2023) ................................ 17

# STATEMENT OF JURISDICTION

## 1.   Jurisdiction in the Tax Court

On August 13, 2019, the Commissioner of Internal Revenue

(Commissioner) issued a notice of deficiency to the Estate of Richard D.

Spizzirri (Estate) determining a deficiency in estate tax in the amount

of $2,251,189, as well as an addition to tax for the Estate's failure to file

its estate tax return on time.  (Doc. 1 Ex. A (Notice of Deficiency).)[1]  Two

months later, on October 23, 2019, the Estate filed a petition in the

United States Tax Court seeking a redetermination of the deficiency

and addition to tax.  (Doc. 1.)  The Tax Court had jurisdiction over this

case pursuant to §§ 6213, 6214, and 7442 of the Internal Revenue Code

of 1986 ("I.R.C.") (26 U.S.C.).

## 2.   Jurisdiction in the Court of Appeals

After entering its memorandum opinion upholding the

Commissioner's determinations on February 28, 2023 (Doc. 54), the Tax

---

[1] "Doc." and "Ex." references are to the documents contained in the record on appeal, as numbered by the Clerk of the Tax Court.  Page numbers for exhibits refer, where applicable, to those printed on the bottom right of exhibits in the format of a five digit number.  "Tr." references are to the trial transcript, as numbered by the court reporter in the Tax Court proceedings.  "Br." references are to the Estate's opening brief on appeal.

Court (Judge Patrick Urda) entered its decision in accordance with that opinion on September 12, 2023 (Doc. 69). The Tax Court's decision finally disposed of all claims of all parties. The Estate timely filed a notice of appeal to this Court on December 5, 2023. (Tax Court Docket (Tab A) at Docket Entry 71); I.R.C. § 7483. This Court has jurisdiction over the appeal pursuant to I.R.C. § 7482(a)(1).

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————————

No. 23-14049

## ESTATE OF RICHARD D. SPIZZIRRI, DECEASED,
## JOHN H. MCATEE, JR., PERSONAL REPRESENTATIVE,

### Petitioner-Appellant

### v.

## COMMISSIONER OF INTERNAL REVENUE,

### Respondent-Appellee

———————————

## ON APPEAL FROM THE DECISION OF
## THE UNITED STATES TAX COURT

———————————

## BRIEF FOR THE APPELLEE

———————————

## STATEMENT OF THE ISSUE

Whether the Tax Court correctly determined that decedent's obligations to make payments to his adult stepchildren under an antenuptial agreement with his wife were not contracted bona fide nor for adequate and full consideration, and that therefore the payments were not deductible under I.R.C. § 2053(a)(3).

# STATEMENT OF THE CASE

## (i)   Course of proceedings and disposition in the court below

Decedent Richard D. Spizzirri died testate in May 2015 in Colorado.  (Doc. 25 (Stipulation of Facts) at ¶¶ 4, 5.)  His wife, Holly Lueders, filed various claims against Spizzirri's Estate, and Lueders's adult children from a previous marriage, James, Margo, and Venetia Young, also each filed claims against the Estate.  (Doc. 25 at ¶¶ 55, 57.) The Estate thereafter made $1 million payments to each of Spizzirri's three stepchildren.  (Doc. 25 at ¶ 63.)

In November 2016, the Estate filed a federal estate tax return (Form 706), showing a gross estate exceeding $81 million and a taxable estate of around $31 million.  (Doc. 25 at ¶ 15; Doc. 54 (Tax Court Opinion) at 7.)  Among other deductions claimed, the Estate deducted the $3 million paid to Spizzirri's stepchildren as claims against the Estate.  (Doc. 54 (Tax Court Opinion) at 7.)  After the IRS began an examination into the Estate's tax liability, it issued a notice of deficiency determining a deficiency in estate tax of around $2 million, based in part on its disallowance of the $3 million deduction for the payments to Spizzirri's stepchildren.  (Doc. 1 Ex. A (Notice of

Deficiency).)  The Estate petitioned the Tax Court for review, which sustained the disallowance of that $3 million deduction.[2]  (Doc. 1; Doc. 54.)  The Estate now appeals.

### (ii)   Statement of the facts

### 1.   The marriage of Spizzirri and Lueders and their antenuptial agreement

The parties do not dispute the relevant facts in this case. Spizzirri, a retired partner of a large New York law firm, married his fourth wife, Holly Lueders in April 1997.  (Doc. 25 (Stipulation of Facts) at ¶¶ 21, 27.)  At the time he married Lueders, Spizzirri had four children from a previous marriage, while Lueders had three of her own children.  (Doc. 25 at ¶¶ 22, 27.)  Spizzirri went on to have two additional children with other women while married to Lueders.  (Doc. 25 at ¶¶ 30, 32.)  Spizzirri and Lueders remained married until Spizzirri died.  (Doc. 25 at ¶ 39.)  The couple never instituted divorce proceedings nor entered into a separation agreement.  (Doc. 25 at ¶ 39.)

---

[2] Although the Tax Court addressed other adjustments to the Estate's liability which the Estate's petition had challenged (*see* Doc. 54 at 1-2), its rulings on the other adjustments are not challenged on appeal (*see* pp. 19 n.6, 23 n.8, *infra*) and, accordingly, are not addressed in this brief.

In March 1997, one month before they married, Spizzirri and
Lueders entered into an antenuptial agreement, colloquially known as a
"prenup." (Doc. 25 at ¶ 34.) At the time the parties signed the prenup,
Spizzirri's net worth was in the range of $24 to $27 million, and
Lueders's was approximately $1.25 million. (Doc. 25 Ex. 13-J (Prenup)
at 462, 464.) In the prenup, Spizzirri and Lueders agreed that their
separate property would remain separate during the marriage. (Doc. 25
Ex. 13-J (Prenup) at 421-22.) Thus, Lueders would have no claim to the
assets that Spizzirri owned prior to the marriage, or to any income and
proceeds therefrom, and vice versa. (Doc. 25 Ex. 13-J at 421-22.) The
parties also agreed that there would be no marital property created
during their marriage. (Doc. 25 Ex. 13-J at 422-23.) The parties agreed
that the prenup's terms were to be construed in accordance with New
York law. (Doc. 25 Ex. 13-J at 454.)

The prenup was organized in terms of the parties' waivers of
rights. As relevant here, in Article IV of the prenup, Lueders waived
the right to estate rights "entitling a surviving spouse to all or any part
of the estate or property of a deceased spouse ... including any income
interest, dower, curtesy, ... or other marital interest of any kind

whatsoever."[3]  (Doc. 25 Ex. 13-J at 432.)  In exchange for Lueders's waiver of these rights, and so long as the parties were still married at the time of Spizzirri's death, Spizzirri agreed to bequeath to Lueders in a will 25% of his gross estate in trust and the right to live in Spizzirri's East Hampton home for five years without any payment for rent or upkeep.  (Doc. 25 Ex. 13-J at 433-36.)  Article IV also provided that in the event of Spizzirri's death, his Aspen home would be sold, and 12.5% of the sale proceeds would go to Lueders.  (Doc. 25 Ex. 13-J at 437.)

Separately, in Article V of the prenup, the parties contracted for Lueders's waiver of her rights to support, maintenance, and any equitable distribution of property in the event of "a dissolution of the marriage."  (Doc. 25 Ex. 13-J at 439-440.)  As the parties agreed, a dissolution of marriage would occur only if (1) either party sent notice of an intent to seek a judgment of separation, divorce, or annulment; (2) either party commenced an action for separation, divorce, or

---

[3] At common law, "dower" was a widow's inheritable interest in the estate of her husband, and "curtesy" was a widower's inheritable interest in the estate of his wife. *Est. of Herrmann v. Commissioner*, 85 F.3d 1032, 1034 n.1 (2d Cir. 1996).  These terms "have been supplanted by laws that entitle a surviving spouse to choose between accepting whatever is provided for the spouse in the decedent's will or taking a statutorily fixed percentage of the estate." *Id.*

annulment; or (3) the parties executed a separation agreement.  (Doc. 25 Ex. 13-J at 439.)  In the event the parties' marriage terminated by entry of a judgment, and in consideration for Lueders's waiver of equitable distribution of property, maintenance, and spousal support, Spizzirri agreed to make lump sum payments to her.  (Doc. 25 Ex. 13-J at 440-41.)  "[A]s additional consideration for [Lueders's] waiver of maintenance and equitable distribution," Spizzirri also agreed to give Lueders 12.5% interest in his Aspen home, and, in the event of the dissolution of their marriage, 12.5% of the gross sale proceeds from the sale of the Aspen home.  (Doc. 25 Ex. 13-J at 425, 441-46.)

The parties modified the prenup five times, each time amending the language in Article IV of the prenup relating to Lueders's waiver of marital rights as Spizzirri's surviving spouse.  (Doc. 25 at ¶¶ 40-48; Doc. 25 Ex. 16-J (Third Modification to Prenup) at 479.)  The relevant modification here is the third one, which the parties signed in November 2005:  in that modification, Spizzirri no longer would bequeath 25% of his estate to Lueders.  (Doc. 25 Ex. 16-J at 478-486.) Instead, Spizzirri agreed that Lueders would receive the greater of (1) Spizzirri's interest in a New York City penthouse and $6,000,000; or (2)

20% of his gross estate minus any available deductions. (Doc. 25 Ex. 16-J at 479-80.) Among the changes in the third modification, Spizzirri agreed to leave $1 million to each of Lueders's three children in his will should he predecease her. (Doc. 25 Ex. 16-J at 479, 481-82.) At the time of the third modification, all of Lueders's children were adults. (Br. 8.) These provisions from the third modification carried over into the fourth and fifth modifications to the prenup, with minor changes that are not at issue here. (Doc. 54 at 5.)

2. **Spizzirri's will, his death, and the probate proceedings**

Prior to his death, and before he married Lueders, Spizzirri executed a will. (Doc. 25 at ¶¶ 29-33; Doc. 25 Exs. 8-J through 12-J.) The will, which was modified by four codicils, by and large bequeathed Spizzirri's Estate to his biological children. (Doc. 54 at 6; Doc. 25 ¶¶ 24, 29-32; Doc. 25 Exs. 8-J through 12-J.) In contravention of the terms of the prenup and the modifications thereto, Spizzirri did not include in his will or the related codicils the transfers of property and lump sum payments to Lueders that he promised in the prenup. (Doc. 54 at 6.) Nor did he include in his will or the codicils the payments of $1 million to each of his stepchildren as promised in the prenup. (Doc. 54 at 6.)

During the last few years of his life, Spizzirri made large payments to multiple individuals. (Doc. 54 at 5.) One of those individuals was his stepdaughter, Lueders's daughter Venetia Young. (Doc. 54 at 5; Doc. 25 at ¶ 92.) Spizzirri made payments to Venetia totaling $25,700 in 2014 and $21,000 in 2015, with the last of these payments made the month before he died. (Doc. 54 at 5; Doc. 25 at ¶¶ 90-91; Doc. 25 Exs. 42-J, 43-J; Doc. 25 Ex. 43-J at 1127.)

When Spizzirri died in May 2015, his stepchildren filed claims against his Estate seeking the $1 million payments promised to them in the prenup. (Doc. 25 at ¶ 55.) The Estate paid $1 million to each stepchild. (Doc. 25 at ¶ 63.) The Estate deducted these payments to the stepchildren as claims against the Estate on its federal estate tax return. (Doc. 54 at 7.)

### 3. The IRS's examination of the Estate's tax return and the resulting notice of deficiency

The IRS began an examination into the Estate's tax liability and determined a deficiency in estate tax of $2,251,189. (Doc. 1 Ex. A; Doc. 54 at 7.) The deficiency resulted in part because the IRS disallowed the deductions for the $3 million payments to Spizzirri's stepchildren. (Doc.

1 Ex. A; Doc. 54 at 7.)  The Estate petitioned the Tax Court for review.
(Doc. 1.)

### 4.    The Tax Court opinion

During the Tax Court trial, the Estate presented expert witnesses
who opined on the enforceability of the prenup between Spizzirri and
Lueders and the value of the marital rights that Lueders waived in the
prenup.  (Br. 12-13.)  The Estate did not call any of Spizzirri's
stepchildren as witnesses.  (Br. 11-13.)  The Tax Court concluded that
the $3 million payments to Spizzirri's stepchildren were not deductible
as claims against the Estate.  (Doc. 54 at 11-16.)

As the court held (Doc. 54 at 11-12), a deduction for a claim
against the estate is subject to the restrictions in I.R.C. § 2053(c)(1)(A),
which requires that the claim against the estate be founded on a
promise or an agreement; be "contracted bona fide" (*i.e.*, with no
evidence of a donative intent by the decedent); and be made in exchange
for "adequate and full consideration in money or money's worth."  I.R.C.
§ 2053(c)(1)(A).  And, as the court explained, the "bona fide" and
"consideration" elements of I.R.C. § 2053(c)(1)(A) are "related but
separate requirements," so that if either is missing the deduction must

be disallowed.  (Doc. 54 at 11.)  The court further explained that under

I.R.C. § 2043(b)(1), a spouse's relinquishment of dower or curtesy, or of

other marital rights in the decedent's property at death, can never be

consideration in money or money's worth.  (Doc. 54 at 13.)  The purpose

of § 2043(b)(1), the Tax Court explained, was to eliminate attempts to

avoid estate tax through "contractual conversion of a wife's dower (or

other property rights she may have as a surviving spouse) into a

deductible claim against [her spouse's] gross estate."  (Doc. 54 at 13

(quoting *Est. of Glen v. Commissioner*, 45 T.C. 323, 333 (1966).)  The

Tax Court observed, however, that spousal rights to support and

maintenance following divorce are treated differently for purposes of

§ 2053(c)(1)(A); relinquishment of such rights in the event of a

dissolution of a marriage "lie outside the strictures of section 2043(b)"

and may constitute adequate and full consideration.  (Doc. 54 at 13, 16

n.8.)

Relying on this legal backdrop, the Tax Court held that the $1

million payments to each of Spizzirri's stepchildren were not deductible

claims against the Estate.  (Doc. 54 at 14.)  The court first concluded

that the payments were donative in character and thus not contracted

bona fide.  As the court found, the bequests stemmed from the prenup and were made in exchange for Lueders's rights to a portion of the estate as the surviving spouse.  (Doc. 54 at 14.)  And, per the prenup's terms, the payments were to be included in Spizzirri's will.  (Doc. 54 at 14.)  These facts indicated to the Tax Court that the payments were testamentary gifts rather than payments for performance under an agreement.  (Doc. 54 at 14.)  The Tax Court noted that the Estate did not provide evidence that the stepchildren had included the payments as income in their tax returns, which might otherwise "belie the conclusion that the payments under Article IV were gifts."  (Doc. 54 at 14.)

The Tax Court also held that the stepchildren's claims were not contracted in exchange for adequate and full consideration in money or money's worth.  Rather, under the prenup and the relevant modifications, the payments were made in lieu of Lueders's marital rights as a surviving spouse.  (Doc. 54 at 14-15.)  As the court held, to treat Lueders's waiver of the marital rights as consideration would "run[] directly contrary to the prohibition staked out in section 2043(b)." (Doc. 54 at 14-15.)

The court further explained that the payments to Spizzirri's stepchildren were not made in exchange for Lueders's waiver of spousal support and equitable distribution in the event of a divorce, because "[t]he property promised to Ms. Lueders in Article V in consideration for the waiver of her spousal rights in the case of divorce is distinct from the property settled on Ms. Lueders and her children in Article IV (as modified) in exchange for inheritance rights." (Doc. 54 at 15.) The prenup's "highly reticulated scheme" indicated to the Tax Court that each section's distinct promises came with distinct waivers of rights. (Doc. 54 at 15-16.)

The Tax Court also determined that even if the prenup did not treat the distinct waivers differently, Lueders's waiver of support rights and equitable distribution were not adequate consideration for the payments to decedent's stepchildren because Spizzirri and Lueders never divorced. (Doc. 54 at 16 n.8.) When a married couple divorces and has agreed to a waiver of spousal support rights during arm's-length negotiations, the court stated, there is adequate consideration because the waiver "augments the income of the spouse who otherwise would be responsible for support payments under state law." (Doc. 54

at 16 n.8.)  But, the Tax Court emphasized, the same is not true when the couple remains married.  In that case, the spouse who waives contingent rights to spousal support from a divorce that never happened in exchange for the right to a definite part of her spouse's estate adds nothing to the estate.  (Doc. 54 at 16 n.8.)

### (iii)  Statement of the standard of review

Whether a claim against an estate is bona fide and supported by adequate and full consideration is a mixed question of law and fact, where the Tax Court's factual findings are reviewed for clear error and its legal conclusions are reviewed de novo.  *Est. of Kosow v. Commissioner*, 45 F.3d 1524, 1529 (11th Cir. 1995) (reviewing for clear error the Tax Court's factual determination that a surviving spouse failed to give adequate and full consideration in exchange for the decedent's promises); *Est. of Waters v. Commissioner*, 48 F.3d 838, 842 (4th Cir. 1995).

## SUMMARY OF ARGUMENT

The Estate failed to meet its burden in proving that it was entitled to deduct the payments it made to Spizzirri's stepchildren.  Instead, the evidence in the Tax Court made clear that those payments were

effectively gifts to the stepchildren that were not supported by consideration. The payments therefore did not meet the requirements of I.R.C. § 2053(c)(1)(A) for deductible claims against the estate, and the Tax Court correctly determined that the Estate could not deduct the payments.

Under the heightened scrutiny that applies to claims against the estate by family members—which Spizzirri's stepchildren are under the applicable Treasury Regulation—the Estate was required to first prove that the payments were bona fide, *i.e.*, that the decedent did not make the payments with a donative intent. The facts presented in the proceeding below support the Tax Court's conclusion that Spizzirri's promise to pay $1 million to each of his stepchildren was a promise reflecting donative intent to pass his wealth on to his family. Spizzirri intended to include the payments in his will, and the payments did not result from any business transaction or performance under any agreement between Spizzirri and his stepchildren. The payments resulted instead from the prenup between Spizzirri and Lueders, and that agreement did not involve any arm's-length negotiation in the ordinary course of business because the parties were married at the

time Spizzirri agreed to the payments. Spizzirri's donative nature towards his stepchildren is further supported by the additional gifts he made to his stepdaughter in the years before he died. As the Estate's own expert testified, the $1 million payments stemmed from Spizzirri's desire to keep Lueders happy and show "largesse" towards his stepchildren.

The Estate further failed to meet its separate burden of proving that the payments were contracted for adequate and full consideration in money or money's worth. Contrary to the Estate's position, neither of Lueders's waivers in the prenup constitutes the requisite consideration.

As to Lueders's waiver of her marital rights in the Estate, § 2043(b)(1) makes clear that a waiver of marital rights can never be consideration in money or money's worth. Congress enacted that section to prohibit contractual conversion of a surviving spouse's interest in the estate (which is always included in the decedent's gross estate under I.R.C. § 2034) into a deductible claim against the estate— the very type of arrangement present here. Thus, Lueders's waiver of her marital rights in Spizzirri's Estate in exchange for the varying

property rights that Spizzirri promised to transfer to Lueders at his death cannot serve as consideration.

Lueders's waiver of her contingent right to spousal support and equitable distribution of property had the parties divorced also is not consideration for the simple reason that the parties never divorced, and Lueders's contingent right therefore never became a presently enforceable right. The cases that the Estate relies on in this regard are inapposite because they involved presently enforceable rights—*i.e.*, support payments when a divorce occurred, and a spouse's community property rights during marriage. Because Lueders never waived any presently enforceable right, there is no consideration supporting the payments to her children.

## ARGUMENT

**The Tax Court correctly determined that the Estate was not entitled to deduct payments it made to decedent's stepchildren**

### A. Introduction to estate taxes and deductions for claims against the estate

A federal estate tax is imposed on the taxable estate of every decedent who is a citizen or resident of the United States. I.R.C. § 2001(a). The taxable estate is determined by subtracting allowable

deductions—including deductions for claims against the estate that are allowable under applicable state law—from the value of the decedent's gross estate. *Id.* §§ 2051, 2053(a)(3). Under the Internal Revenue Code, the value of the gross estate includes the value of a surviving spouse's "dower or curtesy" interest in the gross estate (*i.e.*, a widow's or widower's right to the decedent's property by virtue of the couple's married status).[4] I.R.C. § 2034.

Deductions for claims against the estate are subject to the limitations in I.R.C. § 2053(c)(1)(A), which states that such claims must be "founded on a promise or agreement," and "limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth." Adequate and full consideration in money or money's worth means that, in exchange for the promise that gave rise to the claim against the estate, the decedent received "value which augmented the decedent's estate." *Kosow*, 45 F.3d at 1531 (citation omitted). In limiting the types of claims that can

---

[4] One secondary source helpfully illustrates the effect of § 2034: "if a husband died leaving an estate of $3 million and under state law the surviving spouse was entitled to one third, ($1 million), as dower, this would not reduce the gross estate." R. Stephens, et al., *Fed. Est. and Gift Tax.* ¶ 4.15, 1999 WL 1031620, *1 (updated June 2023).

be deducted from an estate in § 2053(c)(1)(A), Congress sought to prevent deductions for claims that were really taxable gifts or testamentary transfers. *Est. of Huntington v. Commissioner*, 16 F.3d 462, 465 (1st Cir. 1994) ("Congress wanted to be sure that bequests to family members and other natural objects of the decedent's bounty were not transformed into deductible claims through collaboration and creative contracting."); *see also Natchez v. United States*, 705 F.2d 671, 673 (2d Cir. 1983) (Congress enacted § 2053(c)(1)(A) "[t]o prevent the use of marital agreements as a device to deplete an estate and avoid taxation").

Under the Internal Revenue Code, a spouse's relinquishment of martial rights—*i.e.*, dower or curtesy—cannot serve as consideration for a claim against the estate. Section 2043(b)(1) expressly provides that "a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.'"[5] That

---

[5] I.R.C. § 2043(b)(2) provides that a transfer of property made pursuant to I.R.C. § 2516 (when the parties divorce and enter into a

(continued…)

provision aligns with § 2034, under which the value of a surviving spouse's marital rights is included in the gross estate. *See* p. 17, *supra.* Congress enacted § 2043(b)(1) specifically to "eliminate a particular form of estate tax avoidance which involved the contractual conversion of a wife's dower ... into a deductible claim against the gross estate."[6] *Glen*, 45 T.C. at 333; *Natchez*, 705 F.2d at 673-74.

Unlike a spouse's waiver of marital rights that exist at the death of the other spouse, a spouse's waiver of presently enforceable support

---

written agreement regarding their marital property rights) is made for consideration in money or money's worth. This language does not apply here because the parties never divorced.

[6] This issue does not arise often, because most transfers between spouses qualify for a marital deduction that exempts interspousal transfers from estate and gift taxes, and a decedent's taxable estate usually does not include property transferred to the surviving spouse. I.R.C. § 2056(a). "The theory of the marital deduction is that the estate and gift taxes should strike marital property once, on the death of either the decedent or the survivor, but not on both events." *Herrmann*, 85 F.3d at 1035. But Section 2056(a) is not relevant here, where the Estate challenges only the disallowance of the claims against the Estate by Spizzirri's stepchildren. *See United States v. Stapf*, 375 U.S. 118, 125 (1963) (marital deduction is "not a deduction for gifts to the children or a deduction for gifts to privately selected beneficiaries"). Moreover, the Estate has not challenged the Tax Court's rejection of its argument (Doc. 54 at 16 n.8) that the payments to the stepchildren qualified for the marital deduction, and it therefore forfeited the argument. *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1269 (11th Cir. 2007) (this Court will "not consider claims not raised in a party's initial brief").

rights pursuant to a divorce can be adequate and full consideration

supporting the transfer of property to the waiving spouse. A spouse's

waiver of spousal support where there has been a divorce often results

from hostile negotiations and is "usually the product of arm's-length

bargaining negotiations between the parties or their representatives."

*McMurtry v. Commissioner*, 203 F.2d 659, 662 (1st Cir. 1953); *Waters*,

48 F.3d at 848 (discussing the adversarial nature of divorce negotiations

where parties are "separated by divergent interests"). And unlike in

cases involving transfers of property in exchange for waivers of marital

rights that exist when one spouse dies, a transfer of property in

exchange for a waiver of support rights in the case of divorce can add

value to the transferring spouse's estate. Support rights are presently

enforceable when a divorce has occurred, and absent a waiver of those

rights, the transferring spouse would have to make support payments

pursuant to a court-ordered divorce decree in any event. *Herrmann*, 85

F.3d at 1040; *see also Natchez*, 705 F.2d at 674 ("the transfer is deemed

an involuntary liability, imposed on the estate not by agreement but by

law"); *Harris v. Commissioner*, 340 U.S. 106, 112 (1950) (where

agreement settling marital property rights was incorporated into a

divorce decree, the transfer in question was not a taxable gift). Thus, when a divorce takes place, the transfer of property in exchange for the relinquishment of a right to support by a spouse can be made for adequate and full consideration and can qualify as a claim against the estate under § 2053(c)(1)(A). *Kosow*, 45 F.3d at 1531-34.

But a waiver of contingent rights to support and equitable distribution of property in a prenup for a marriage that does *not* result in divorce does not constitute consideration supporting the transfer of property in exchange for the waiver. Where a spouse relinquishes "a contingent right to an equitable distribution of her husband's property in the event of a divorce that never occurred" in exchange for receiving "the right to a definite part of her husband's estate," *i.e.*, the transfer of property, the first spouse "add[s] nothing to [the] estate" while taking from it. *Herrmann*, 85 F.3d at 1040-41. In contrast, when a divorce has taken place, "two things have occurred: the contingent right (which was waived) has come into effect and, as the Court and the Code have recognized, the likelihood of tax avoidance has been rendered negligible by the arms-length nature of the unhappy context." *Id.* at 1040.

Support rights that result from a divorce decree are not the same as the rights a widow or widower would have as a result of a spouse's death. "Unlike divorce or legal separation, termination of a marriage by the husband's death never leaves the widow with support rights for the simple reason that the husband as an income-producing entity is no longer in existence." *Rubin's Est. v. Commissioner*, 57 T.C. 817, 826 (1972), *aff'd*, 478 F.2d 1399 (3d Cir. 1973). As a result, when a spouse dies and there is no divorce or legal separation prior to that spouse's death, the surviving spouse's relinquishment of contingent support rights does not constitute consideration.[7]

---

[7] The Fifth Circuit in *Sherman v. United States* held that where the decedent died before he and his wife could divorce but had already entered into a separation agreement, the estate's payments of support to his wife pursuant to that agreement was in consideration of the wife's relinquishment of support rights. 462 F.2d 577, 578-79 (5th Cir. 1972). That case is distinguishable for two reasons: (1) there was no agreement in anticipation of divorce here and thus no arms-length negotiations for the payments at issue; and (2) in exchange for the payments to Spizzirri's stepchildren, Lueders waived her rights to marital property as the surviving spouse, not her rights to support and maintenance. *See* (Doc. 25 Ex. 16-J at 479 (third modification to the prenup, which indicates that it is altering Article IV of the prenup relating to marital rights); *see also* p. 32-35, *infra*.

**B.    The payments to Spizzirri's stepchildren are not deductible as claims against the Estate because they do not meet the requirements of I.R.C. § 2053(c)(1)(A)**

In general, the burden is on the taxpayer to prove entitlement to a deduction.  *See INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *Welch v. Helvering*, 290 U.S. 111, 115 (1933); *see also Kosow*, 45 F.3d at 1531 (burden was on the taxpayer to prove that the "statutory conditions to the [claimed] deduction" were met).  Congress, in I.R.C. § 7491(a), provided that a taxpayer may shift the burden of proof to the Commissioner if the taxpayer introduces credible evidence regarding entitlement to the claimed deduction.  But, as the Tax Court here correctly concluded and as is discussed further below, the Estate failed to produce the credible evidence necessary to shift the burden of proof.  (Doc. 54 (Tax Court opinion) at 7-8.)[8]  Nor did it meet its burden of

---

[8] While the Estate originally appeared to challenge the Tax Court's ruling that the Estate was not entitled to a deduction for the value of Lueders's right to reside in decedent's East Hampton property; that the Estate was not entitled to a deduction for administration expenses; that Spizzirri's payments to family and friends in the years before he died were taxable gifts; and that the Estate was liable for an addition to tax for its failure to timely file its estate tax return, the Estate does not raise these arguments in its opening brief and therefore has forfeited them.  (Doc. 10 (Civil Appeal Statement filed in this Court) at 4); *see APA Excelsior*, 476 F.3d at 1269.

proving that the payments to Spizzirri's stepchildren "were contracted bona fide and for an adequate and full consideration in money or money's worth." I.R.C. § 2053(c)(1)(A). The "bona fide" and "consideration" elements of § 2053(c) are distinct requirements, and taxpayer has the burden of proving both elements. *Glen*, 45 T.C. at 345. The Estate failed to prove either element.

### 1. The payments were not bona fide

The "bona fide" requirement in I.R.C. § 2053(c)(1)(A) prohibits a deduction "to the extent it is founded on a transfer that is essentially donative in character (a mere cloak for a gift or bequest)." Treas. Reg. (26 C.F.R.) § 20.2053-1(b)(2)(i). Claims by family members of the decedent against the estate are subject to heightened scrutiny because a decedent is most likely to be making a gift to a family member rather than paying for a contractual obligation. *Huntington*, 16 F.3d at 466. Treasury Regulation § 20.2053-1(b)(2)(iii)(A) defines "family members" in this context to include the "spouse of the decedent ... and lineal descendants of the decedent or of the decedent's spouse." Under this definition, Lueders's children are Spizzirri's family, and, thus, the gifts

to them are subject to the same heightened scrutiny as gifts to other family members.

Treasury Regulation § 20.2053-1(b)(2)(ii) provides indicia of when claims against the estate by family members may be bona fide: (1) the transaction underlying the claim "occurs in the ordinary course of business, is negotiated at arm's length, and is free from donative intent"; (2) the claim "is not related to an expectation or claim of inheritance"; (3) the claim originates from an agreement between the decedent and the family member; (4) performance by the claimant stems from an agreement between the decedent and the family member; and (5) "all amounts paid in satisfaction or settlement of a claim or expense are reported by each party for Federal income and employment tax purposes ... in a manner that is consistent with the reported nature of the claim or expense." Treas. Reg. § 20.2053-1(b)(2)(ii).

Spizzirri's payments to his stepchildren were not bona fide because they were donative. The payments did not result from the performance by the stepchildren pursuant to any agreement between Spizzirri and them, or from any transaction—let alone a transaction in the ordinary course of business—that created a debt against the Estate

in favor of the stepchildren. Treas. Reg. § 20.2053-1(b)(2)(ii)(A), (C)-(D).

Rather, in agreeing to pay $1 million to each of his stepchildren in the

prenup, Spizzirri agreed to "make, and keep in effect, a will"

memorializing the agreement's terms and thereby indicated his desire

to pass his wealth on to them gratuitously at his death. (Doc. 25 Ex. 16-

J (Third Modification to Prenup) at 479.) Inherently, that promise was

not a bona fide, arms-length obligation. Treas. Reg. § 20.2053-

1(b)(2)(ii)(A); *Huntington*, 16 F.3d at 467-68 ("[I]f the debt underlying

the claim has its origin in a discretionary desire to pass on wealth to

specific individuals—giving those individuals a claim 'to' a portion of

the estate—it is unlikely to be the sort of bona fide, arm's-length

obligation that is deductible under the statute."). The stepchildren's

claims therefore also were "related to an expectation or claim of

inheritance." Treas. Reg. § 20.2053-1(b)(2)(ii)(B). As the Tax Court has

held in another case where, similarly to here, the decedent used a

prenup as a way to provide for his adult children, the decedent "ma[de]

provision for the share of his estate" even though he failed to include

the adult children in his will. *Keller v. Commissioner*, 44 T.C. 851, 861

(1965). The court thus concluded in *Keller* that the "circumstances

point[ed] to a donative intent on the part of decedent." *Id.* The Tax Court correctly reached the same conclusion here.

The payments to Spizzirri's stepchildren also were not born out of an arms-length negotiation between Spizzirri and Lueders that might indicate an agreement made in the ordinary course of business. Treas. Reg. § 20.2053-1(b)(2)(ii)(A). They arose, instead, from the third modification to the prenup between Spizzirri and Lueders, which the parties signed while still married. (Doc. 25 Ex. 16-J at 478-81.) Lueders's waiver of her marital and support rights in the prenup in exchange for these payments does not preclude a finding of donative intent on the part of the decedent. *See Keller*, 44 T.C. at 860-61 ("The fact that [decedent's wife] may have requested the provision for the adult daughters does not, standing alone, preclude a donative intent on the part of decedent."). That is especially the case here, where, as explained in further detail below, Lueders obtained the payments to her children in exchange for the waiver of her marital rights, which cannot

serve as consideration under I.R.C. § 2053(c)(1)(A). I.R.C. § 2043(b)(1);
*see* p. 32-34, *infra*.[9]

The Estate's suggestion that Spizzirri and Lueders were estranged
leading up to Spizzirri's death (Br. 20) does not transform the donative
payments into deductible claims. The relevant period of time for
examining whether there was donative intent is the time the couple
entered into the contract. *See Herrmann*, 85 F.3d at 1039 (focusing
§ 2053(c)(1)(A) inquiry on time period parties entered into prenup). At
the point at which Spizzirri and Lueders agreed to the $1 million
payments for the stepchildren in the third modification to the prenup,
they were still married; in fact, they never legally separated nor
divorced. (Doc. 25 at ¶ 39.) And, as the Estate's own expert testified,
Spizzirri agreed to make the payments to keep Lueders happy and
"show[] largesse to her children." (Doc. 40 (Tr. Vol. 4) at 352-53.)
Moreover, even towards the end of Spizzirri's life, Spizzirri was showing
a donative nature towards his stepchildren. As the checks included in

---

[9] The Estate attempts to undermine this waiver by noting that
Lueders retained the right to receive additional gifts from Spizzirri.
(Br. 22.) That right is not the same as Lueders's right to marital
property upon her husband's death by virtue of the law. *See* pp. 5 n.3,
18, *supra*.

the record below indicate, Spizzirri made significant payments to Lueders's daughter Venetia Young up until the month prior to his death (totaling $25,700 in 2014 and $21,000 in 2015).[10] (Doc. 54 at 5; Doc. 25 at ¶¶ 90-92; Doc. 25 Exs. 42-J, 43-J.)

The fact that Spizzirri's stepchildren were adults at the time he and Lueders entered the third modification to the prenup further supports the conclusion that the payments to the stepchildren were gifts. Indeed, transfers like the ones at issue are subject to "close scrutiny, especially when the third person is an adult child or other natural object of the transferor's bounty." *Glen*, 45 T.C. at 344-45. Courts pay special attention to transfers to children beyond their needs for support during minority because the transfers are more likely to be bequests that should be taxed, and because construing the statute otherwise would open a means for parents to transfer property to adult children free from taxation. *Huntington*, 16 F.3d at 465-66; *Keller*, 44 T.C. at 860-61; *see also Spruance v. Commissioner*, 60 T.C. 141, 154 (1973), *aff'd*, 505 F.2d 731 (3d Cir. 1974).

---

[10] On appeal, the Estate does not challenge the Tax Court's ruling that these payments were taxable gifts. *See* p. 23 n.8*, supra*.

The Estate further failed to provide evidence that the payments to Spizzirri's stepchildren were reported as income for federal tax purposes—evidence which might have negated the Tax Court's well-supported conclusion that the payments were simply gifts.  Treas. Reg. § 20.2053-1(b)(2)(ii)(E).  On this point, the Estate particularly urges that the burden should shift to the IRS, arguing that the tax return information of the stepchildren was unavailable to it.  (Br. 23.)  But as discussed above (p. 23, *supra*), the burden remains on the taxpayer absent its introduction of credible evidence to shift the burden.  The Estate might have shifted the burden, or even met its burden, by having Spizzirri's stepchildren testify as to the payments and how they treated the payments for tax purposes at the trial, but it did not call any of the stepchildren as witnesses.  *See* p. 9, *supra*.  Because the Estate failed to offer any credible evidence to establish the bona fide nature of the $1 million payments, the burden never shifted to the Commissioner.  *Longino v. Commissioner*, 593 F. App'x 965, 968 (11th Cir. 2014).  The Tax Court correctly held that the "bona fide" requirement was not met.  (Doc. 54 at 14.)

### 2. The payments were not contracted for adequate and full consideration in money or money's worth

Even if the Estate somehow met its burden of demonstrating that the payments were bona fide—which it did not—it failed to demonstrate that the payments were contracted for consideration in money or money's worth. The Estate claims that the consideration for the payments was Lueders's waiver of support rights and equitable distribution, as well as her agreement in the third modification to accept marital property with lesser value than that for which the decedent and Lueder originally contracted. (Br. 24, 33.) But neither the waiver of marital property nor the waiver of support rights and equitable distribution in the event of a divorce that never happened qualifies as consideration.[11]

---

[11] To be clear, the Commissioner does not dispute that the prenup between Spizzirri and Lueders was enforceable. At issue in this case is not whether the payments to Lueders's children were made pursuant to an enforceable prenup, but, instead, whether those payments can be deducted from the gross estate. Because the payments were not supported by adequate consideration, they cannot be deducted. Thus, the Estate's arguments and the witness testimony it presented below regarding the Estate's belief that it was required to pay the claims under state law are irrelevant. *Est. of Carli v. Commissioner*, 84 T.C. 649, 658 (1985) (noting that "the requirement of 'consideration in money

(continued...)

### a. By law, Lueders's waiver of marital rights at Spizzirri's death is not consideration

The Estate argues (Br. 33-37) that Lueders's relinquishment of the right to receive income from a marital trust containing 25% of Spizzirri's gross estate in exchange for fixed payments in the third modification of the prenup is one form of consideration for the payments to her children. The third modification belies the Estate's recharacterization of the exchange. The modification makes clear that Spizzirri's transfers of property and payments to Lueders and her children therein were made "in lieu of any other rights which may be available to [Lueders] as the surviving spouse of [Spizzirri]," *i.e.*, in exchange for Lueders's waiver of her marital rights in the Estate. (Doc. 25 Ex. 16-J at 479.) As such, Lueders provided no consideration supporting the payments to the stepchildren, because I.R.C. § 2043(b)(1) makes clear that such a waiver of marital rights is not consideration in money or money's worth.

---

or money's worth' for Federal estate tax purposes invokes a higher standard of consideration than that required to establish the validity of a contract under State law").

Even if the third modification were not clear on its face that Spizzirri agreed to make the payments to his stepchildren in exchange for Lueders's waiver of her marital rights as the surviving spouse, Lueders's relinquishment of her right to 25% of Spizzirri's gross estate still is not consideration, but instead, just a recasting of her original waiver. The Estate conveniently ignores that Lueders originally received the right to 25% of Spizzirri's gross estate in a marital trust in exchange for her March 1997 waiver of marital rights upon Spizzirri's death in the prenup. (Doc. 25 Ex. 13-J at 432-36.) Lueders relinquished her rights to income from that marital trust in the third modification, which—like each of the modifications thereafter—made clear that it was altering Article IV of the prenup relating to Lueders's waiver of marital rights as the surviving spouse. (Doc. 54 at 4; Doc. 25 Ex. 16-J at 479 (stating that the third modification is amending Article IV of the prenup.) Thus, at the time of the third modification, Lueders's right to receive income from the marital trust represented her marital rights in Spizzirri's Estate upon his death. Regardless of the varying transfers that Spizzirri promised in exchange for Lueders's waiver of her marital rights, the waiver is not consideration in money or money's

worth.  I.R.C. § 2043(b)(1); *see also Herrmann*, 85 F.3d at 1035.  Indeed,

the purpose of § 2043(b)(1) is to prevent the type of transfer at issue in

this case—a transfer from one spouse to another that transforms

nondeductible marital rights in the estate into deductible claims

against the estate.  *Id.*

The Estate's arguments (Br. 34-36) claiming that Lueders's waiver

in the third modification freed additional money in Spizzirri's gross

estate for his heirs have no bearing on whether the Estate can deduct

transfers of money that were not supported by consideration, for the

Internal Revenue Code is clear that where there is no adequate

consideration, deductions are not allowed.  I.R.C. § 2053(c)(1)(A); *see*

*also Commissioner v. Wemyss*, 324 U.S. 303, 307-08 (1945) ("The section

taxing as gifts transfers that are not made for 'adequate and full

(money) consideration' aims to reach those transfers which are

withdrawn from the donor's estate.").  And, contrary to what the Estate

suggests (Br. 18), it is not necessary for this Court to find that Spizzirri

and Lueders had any tax avoidance motive; rather, "the substance of

the arrangement as a potential device for defeating the estate tax ... is

of controlling significance." *Huntington*, 16 F.3d at 466 (citation

omitted).

> **b.** **Lueders's waiver of her contingent right to spousal support and the equitable distribution of property in the event of divorce is not consideration because the parties never divorced**

As discussed above (pp. 32-33, *supra*), the third modification

makes clear that Lueders waived her marital rights in exchange for

Spizzirri's promise to pay her children $1 million each.  And, as the Tax

Court found, that modification amended Article IV of the prenup which

specified the property Lueders would receive in exchange for her waiver

of marital rights; it did not relate to Lueders's waiver of support and

equitable distribution, which the parties dealt with separately in Article

V.  (Doc. 54 at 14-15.)  But, even if the Estate were right that the Tax

Court wrongly treated the parties' distinct waivers distinctly (Br. 24-

29), Lueders's waiver of support and equitable distribution in Article V

still could not serve as the requisite consideration.

Although waivers of support rights in cases that result in divorce

can be adequate consideration, *Herrmann*, 85 F.3d at 1039-40, the same

is not true of such waivers in prenups where no divorce results.  As the

Second Circuit in *Herrmann* held, while "[s]upport rights are presently enforceable rights, and payment of support does not constitute a taxable gift [, ...] that is not true of a never-ripened right" to support payments or to the equitable distribution of property when a divorce never happens. *Id.* at 1040; *see* pp. 19-22, *supra*. "At most," a widow who waives her right to support payments or the equitable distribution of property in the case of a divorce, "traded away a contingent future right." *Id.* at 1039. Notably, the Estate fails to discuss *Herrmann*, the case most apt here, and a case that the Tax Court relied on in its opinion. (Doc. 54 at 15-16, 16 n.8.)

For the very reasons *Herrmann* is apposite here, this Court's opinion in *Kosow* (on which the Estate relies) is inapposite. The parties in *Kosow* did divorce, and the wife's waiver of her support rights thus was adequate consideration for payments the decedent's estate made to the couple's children. *Kosow*, 45 F.3d at 1527, 1534. Contrary to the Estate's position (Br. 31), it is of no significance that the parties drafted the agreement in *Kosow* before they divorced. The payments that gave rise to the claim in *Kosow* were not enforceable until the divorce occurred. *See Herrmann*, 85 F.3d at 1040 (contingent right to support

comes into effect when divorce occurs). Thus, in this context, when the agreement giving rise to the claim against the estate is drafted is not the relevant inquiry—it is instead whether the parties actually divorced and the contingent right to the ex-spouse's property ripened into a presently-enforceable right. *Id.* at 1039-40.

Another fact that distinguishes *Kosow* is that the parties in that case drafted the separation agreement at issue after separating and in anticipation of their divorce. *Kosow*, 45 F.3d at 1527. They therefore were negotiating at arm's length, a fact that the parties stipulated to in *Kosow*.[12] *Id.* at 1527-28. There is no similar fact at play here, where the parties not only were still married when Spizzirri agreed to make the payments to his stepchildren (and the parties never initiated proceedings to dissolve their marriage), but also the Estate's own expert testified that Spizzirri agreed to make the payments to keep Lueders happy. (Doc. 40 (Tr. Vol. 4) at 352-53.) Spizzirri's agreement to pass

---

[12] Moreover, at the time the parties in *Kosow* bargained for the payments for the children, the children were minors. 45 F.3d at 1526-27 (noting young age of children). There thus was no reason to examine the payments under any heightened scrutiny as there is in cases involving gifts to adult children, like the ones here. *See Glen*, 45 T.C. at 344-45, *supra* at p. 29.

his wealth on to his stepchildren in the prenup was not the result of an arm's-length negotiation separated by divergent interests, like negotiations in the divorce setting. *Huntington*, 16 F.3d at 467.

The Estate's reliance on the Tax Court decision in *Estate of Carli v. Commissioner* also fails to offer the requisite support for its position. The only common fact that this case shares with *Carli* is that in both cases the decedent and his wife were still married at the time of the decedent's death. *Carli*, 84 T.C. at 652. But the vital fact in *Carli* that sets it apart is that the wife in that case had a community property interest in her husband's future earnings—a presently enforceable right similar to a spouse's right to support upon divorce. *Id.* at 658-59; *Herrmann*, 85 F.3d at 1039-40 ("the crucial fact in *Carli* was that the widow's community property interest in her husband's future earnings was also a presently enforceable right"). Under California's community property rules, when one spouse dies, the surviving spouse takes half of the community property which is then excluded from the deceased spouse's estate. *Herrmann*, 85 F.3d at 1040 (citing *Carli*, 84 T.C. 649.) As the Second Circuit in *Herrmann* noted, "[a]bsent [the widow's] waiver of that interest [in *Carli*], half [her husband's] earnings would

have been excluded from his gross estate because they would have been her property, not his." *Id.*

Unlike in *Carli*, where the wife's relinquishment of her presently enforceable rights to community property constituted adequate and full consideration because it increased the estate's value, Lueders never waived a presently enforceable right that added to Spizzirri's Estate. 84 T.C. at 659; *Herrmann*, 85 F.3d at 1040. New York, the law of which applies to the prenup at issue here (Doc. 25 Ex. 13-J (Prenup) at 454), is not a community property state, but instead an equitable distribution state where a spouse does not have a presently enforceable and equal interest in the other spouse's property. *See Musso v. Ostashko*, 468 F.3d 99, 105 (2d Cir. 2006) ("When the New York Legislature passed the equitable distribution law in 1980, it rejected the concept of 'equal distribution,' or community property, whereby each spouse obtains an equal interest in the property at the moment it becomes marital property."). Lueders never had an enforceable right to support payments and equitable distribution. As a result, Lueders's contingent right to support and equitable distribution never came into effect *in praesenti* and her waiver of that right had no value when

Spizzirri died.  Were this Court to allow the deduction the Estate seeks here, "the effect would be that his taxable estate would be diminished by the full amount of what he gave up, in exchange for a waiver that added nothing to it."  *Herrmann*, 85 F.3d at 1039.

## CONCLUSION

For these reasons, the judgment of the Tax Court should be affirmed.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ Pooja A. Boisture

ELLEN PAGE DELSOLE                    (202) 514-8128
POOJA A. BOISTURE                     (202) 514-6072
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*
  *Appellate.TaxCivil@usdoj.gov*
  *Pooja.A.Boisture@usdoj.gov*

APRIL 24, 2024

## CERTIFICATE OF COMPLIANCE

### With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

Check the appropriate box in section 1, and check the box in section 2.

### 1. Type-Volume

[X]   This document complies with the word limit of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f), this document contains <u>8,211</u> words.

**or**

[ ]   This brief complies with the line limit of FRAP ____ because, excluding the parts of the brief exempted by FRAP 32(f) and ____, this brief uses a monospaced typeface and contains ____ lines of text.

### 2. Typeface and Type-Style

[X]   This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).

(s)   <u>Pooja A. Boisture</u>

Attorney for  <u>Appellee</u>

Dated: <u>April 24, 2024</u>

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2024, this brief was filed with the Clerk of the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system, and seven (7) paper copies were sent to the Clerk by First Class Mail. Counsel for appellant was served through the CM/ECF system.

/s/ Pooja A. Boisture
Pooja A. Boisture
*Attorney*